## SMITH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4593.

United States Court of Appeals
First Circuit.

Dec. 10, 1951.

Walter F. Gibbons, Providence, R. I. (James F. Armstrong, Providence, R. I., on brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., on brief), for respondent.

Robert F. Pickard, Providence, R. I., was on brief for Norman B. Smith amicus curiæ.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This case arises on taxpayer's petition for review of a decision of the Tax Court of the United States. It involves a deficiency of income tax for the year 1948 in the amount of $1,182.52 and is brought pursuant to the provisions of Sections 1141 and 1142 of the Internal Revenue Code, 26 U.S. C.A. §§ 1141, 1142. The opinion below appears in 16 T.C. 639 where the facts are more fully set forth.

A brief statement of the facts, as given by petitioner's counsel in his opening statement before the Tax Court, is in substance as follows:

"This is a petition for redetermination of a deficiency in income tax for the calendar year 1948 in the amount of $1,182.52. The question involved is whether or not an amount of $5,000 received by the Petitioner from her divorced husband is includible in her gross income for the year 1948, under

the provisions of Section 22(k) of the Internal Revenue Code.

\*     \*     \*     \*     \*     \*

"On October 14, 1937, the Petitioner and her then husband, Norman B. Smith, entered into an agreement providing for the settlement of all questions of maintenance and support and the disposition of property rights. That agreement provided for the payment of certain amounts to the wife during the joint lives of the husband and wife.

"On April 18, 1938, a final decree of divorce was entered by the Superior Court for the County of Washington in the State of Rhode Island. The final decree of divorce incorporated by reference all of the terms of the agreement dated October 14, 1937.

"On September 1, 1944, the Petitioner and her divorced husband entered into a new agreement. The new agreement expressly canceled and terminated all of the provisions of the earlier agreement. The new agreement also provided for the payment of the amount of $5,000 per year to this Petitioner, by the divorced husband, during the term of their joint lives.

"On January 14, 1946, upon motion of Norman B. Smith, the divorced husband, a decree was entered by the Superior Court for the County of Washington, State of Rhode Island, the Court having jurisdiction, expressly canceling and terminating all provisions of the earlier decree in so far as relating to alimony. Thereafter, the only obligation was the contractual obligation of the husband under the agreement dated September 1, 1944, to pay to this Petitioner the sum of $5,000 per year.

"It is the position of the Petitioner that this amount is not includible in her gross income for the calendar year 1948, since the only obligation is under a written instrument which is not incident to a decree of divorce."

To this statement should be added the further facts that early in 1944 the husband was cited by the Superior Court of Rhode Island to appear and show cause why he should not be adjudged in contempt for failure to keep up his payments. The husband then moved to modify the final decree seeking a reduction of the alimony payments. It was subsequent to these events that the September 1, 1944 agreement was made. On January 14, 1946 the decree of the Superior Court was entered and on the same day the petitioner filed in said court her waiver of alimony "in consideration of the execution by the respondent (her husband) \* \* \* of an agreement, dated September 1st, 1944."

One of the clauses in the September 1, 1944 agreement stated: "*Whereas,* both parties hereto desire to compromise their differences and terminate said litigation by effecting a final agreement providing for future payments to be made by the party of the second part and effecting a final property settlement as herein set forth, all in lieu of all marital obligations of the party of the second part to the party of the first part, including all obligations to make the payments required under said agreement of October 14, 1937."

The petitioner's waiver of alimony, the decree of January 14, 1946, the September 1, 1944 agreement and the October 14, 1937 agreement are all related to the divorce proceedings between the petitioner and her husband. The petitioner cannot deny that the 1937 agreement was incident to the April 18, 1938 divorce decree because it was specifically incorporated in that decree.

The question presented is whether or not the amount of $5,000 received by the petitioner from her divorced husband in 1948 pursuant to the terms of the 1944 agreement represents taxable income to her under the provisions of Section 22(k) [1] of the Internal Revenue Code.

1. Title 26, U.S.C.A. § 22(k) insofar as here material reads as follows:

"*Alimony, etc., income.* In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or un-

This section was explained in the Report of the Ways and Means Committee (H. Rep. No. 2333, 77th Cong. 2d Sess., pp. 71-72 [1942-2 Cum.Bull. 372, 427]) in which it was stated that Section 22(k) was added: "* * * in order to provide in certain cases a new income tax treatment for payments in the nature of or in lieu of alimony or an allowance for support as between divorced or legally separated spouses. These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includible in his gross income. In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony."

The petitioner contends that the 1944 agreement cannot be said to be "part of the package of the divorce." She succinctly states the argument as follows:

"The agreement of 1944 entered into six years after the entry of the final decree of divorce was not incident thereto as a matter of fact and law.

"* * * in order for the amounts received by the taxpayer from her divorced husband to be taxable to her under the provisions of Section 22(k) it must be shown that the agreement of September 1, 1944, was 'incident to' the divorce; that the term 'divorce' as used in the statute means the divorce decree; and that a written agreement is not incident to the decree unless it is part and parcel of the proceedings leading up to the final decree of divorce. The final decree in this case was entered on April 18, 1938. The agreement under which the payments here involved were made was dated September 1, 1944, more than six years later. Under these circumstances, it is submitted, that the 1944 agree-

ment was not 'incident to' the decree of divorce."

The petitioner contends that the case of Commissioner of Internal Revenue v. Walsh, 86 U.S.App.D.C. 365, 183 F.2d 803, is "precisely in point." She states that the court "agreed that the agreement must be incident to the divorce decree itself in order to sustain taxability" and then she concludes that the "purely contractual obligation of the husband to make the payments required by the agreement of 1944" is not within the scope of Section 22(k). The case of Commissioner of Internal Revenue v. Murray, 2 Cir., 174 F.2d 816, is also cited by petitioner in support of her contention.

Both cases are distinguishable on the facts and both opinions place a degree of reliance on state law. In the Walsh case there were three agreements. The first was on February 1, 1927, before the divorce was granted. The final decree, entered on August 1, 1928, did not refer to this agreement. As to the other two agreements (made in 1934 and 1941), they were entered into several years after the divorce decree and the court stated that under California law these agreements would not have been enforceable under the divorce decree. Likewise in Cox v. Commissioner of Internal Revenue, 3 Cir., 176 F.2d 226, no agreement was reached until eight months after the divorce.

In the Murray case there were two agreements but the court refrained from deciding that the agreements must be incident to the divorce decree and merely accepted the Tax Court's interpretation on this point for the purposes of that appeal. It also assumed that the second agreement was not incident to the divorce and stated that "the only 'legal obligation' which was 'imposed upon' the 'husband under' the 'decree' was to make the payments provided by the (first) contract of 1934, which was incorporated in the decree, * * *." [174 F.2d 818.]

der a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to

property so transferred shall not be includible in the gross income of such husband. * * *"

The origin or motive for the 1944 agreement can be traced to no obligation other than one arising from a family or marital relationship. This being so, the conditions of Section 22(k) are fully satisfied. Congress recognized that the obligation could be set up either by contract or decree. It is stated in the Report of the Committee on Finance (S.Rep. No. 1631, 77th Cong., 2d Sess. p. 84): "This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree."

The criticisms of the petitioner as to the findings of fact by the Tax Court are without merit. Her arguments appear unduly technical and unrealistic in the circumstances here. The 1937 agreement clearly indicates that it was not regarded by either party as final and that subsequent changes were contemplated. The finding that the 1944 agreement was "supplemental" and a "revision" of the 1937 agreement was on the facts here a proper characterization. The 1944 agreement did cancel the 1937 agreement but that is not conclusive. It merely indicates that the parties reappraised their positions and altered circumstances and then agreed to different and changed terms. The genesis of the 1937 and 1944 agreements were the same—a satisfaction by the husband of his marital obligation which continued after the divorce. It follows, therefore, that since the 1937 agreement was incident to the divorce decree, being specifically mentioned therein, that the 1944 agreement was also incident thereto. In fact the decree of January 14, 1946 specifically mentions the September 1, 1944 agreement.

Our conclusion is reached even on petitioner's assumption that the phrase in Section 22(k) "under a written instrument incident to such divorce" means that the agreement must be "incident to a divorce decree". We need not take issue with the petitioner on this point. See Mahana v. United States, 88 F.Supp. 285, 115 Ct.Cl. 716, certiorari denied 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383. Whether that is the correct construction of Section 22(k) we do not undertake to decide. It is appropriate to add, however, that in view of the congressional purpose in Section 22(k) to secure tax uniformity irrespective of variances in state laws, there is much to be said for reading the phrase "a written instrument incident to such divorce" as referring to the continuing status of the legal obligation to support the divorced spouse. See Mertens, Law of Federal Income Taxation, Vol. I, 1951 Cum.Pocket Supp. § 5.23 at pp. 107, 108.

The decision of the Tax Court is affirmed.