*Decisions will be entered under Rule 50.*

FLORENCE B. MOSES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27160.     Promulgated September 17, 1952.

*B. S. Barron, Esq.*, for the petitioner.
*Robert R. Blasi, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The only issue is whether the payments received by petitioner from Albert Moses in November and December, 1944, were taxable to the petitioner under the provisions of section 22 (k) of the Internal Revenue Code.[1] The Florida divorce decree

---

[1] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of,

obtained by Albert Moses did not provide for alimony nor did it incorporate the provisions of the voluntary separation agreement. Thus, the payments received by petitioner were not imposed by a decree of divorce or separation. The New York separation action had been discontinued when the voluntary separation was agreed upon. The only remaining basis for taxing petitioner is that the obligation to make the payments was imposed under a written instrument incident to a divorce or separation. It is contended by respondent that the voluntary agreement executed on April 4, 1944, is incident to the Florida divorce decree entered on October 23, of the same year. At the time the separation agreement was entered into and prior thereto, discussions pertaining to a divorce had occurred. Albert Moses wished to obtain a divorce as is evidenced by his proposals to petitioner regarding the institution of divorce proceedings. The petitioner rejected these suggestions and stated that she would not give her husband a divorce under any circumstances. She refused to sue him for divorce in New York or elsewhere or to consent to a divorce. Following this adamant stand by petitioner, Albert Moses agreed to a voluntary separation and the legal proceedings were discontinued.

It is evident from the conduct of the parties that the voluntary agreement was not entered into as an incident to a divorce but as a substitute for a divorce or legal separation. The petitioner was advised by counsel as to his opinion of the consequences of the separation agreement and she accepted this alternative to a legal separation or divorce proceeding. The evidence points not to the conclusion that a divorce was contemplated by the parties entering into the agreement but rather that the voluntary separation agreement eliminated the issue of a divorce.

More than six months later Albert Moses instituted divorce proceedings in the State of Florida. Without entering into the question of the validity of this divorce we are of the firm opinion that the separation agreement of April 4, 1944, was not incident to the Florida divorce. The divorce decree obtained in Florida was the result of the action of Albert Moses. He wished to marry again but the discontinued proceedings brought by his wife for legal separation and the voluntary separation agreement entered into did not provide a status for remarriage. When a divorce was obtained in Florida, Albert Moses remarried the same day.

---

a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband.

The evidence does not indicate that the parties entering into the agreement contemplated divorce proceedings as were true in *Bertram G. Zilmer*, 16 T. C. 365. If plans for a divorce following the agreement were held by Albert Moses, he did not bring them to light. The fact that one party may be considering the possibility of a divorce is not sufficient to make the voluntary separation agreement an incident to a divorce later obtained. *Cecil A. Miller*, 16 T. C. 1010. Although there is no requirement of positive proof that both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement, *Izrastzoff* v. *Commissioner*, 193 F. 2d 625, affirming *Estate of Daniel G. Reid*, 15 T. C. 573, the actions and conduct of the parties, the time between agreement and divorce proceedings, and the participation of the parties in obtaining a divorce are elements and factors to be considered.

Upon examination of the evidence, we are left with the conclusion that if a divorce had been made the consideration for entering into the voluntary separation agreement, the petitioner would not have executed the agreement and would have continued the separation proceedings she had commenced. In this respect, the facts presented here differ from those of *Robert Wood Johnson*, 10 T. C. 647, wherein the taxpayer's wife assured him that she would institute a divorce suit if he would sign the agreement there in question. Upon the same basis, *George T. Brady*, 10 T. C. 1192, is distinguishable. The subject of a divorce was under discussion prior to the execution of the separation agreement but the result of that discussion was that the petitioner would not consent to a divorce. The provisions of the voluntary agreement were not adopted in the divorce proceedings to which petitioner was not a party. The voluntary separation agreement was not employed by the court granting the divorce in establishing the legal and economic relationships between the parties as was true in *Lerner* v. *Commissioner*, 195 F. 2d 296.

The respondent contends that section 21 of the agreement demonstrates that both husband and wife contemplated a divorce. That section declared that the provisions of the agreement may be incorporated in the final judgment or decree of divorce in any action brought by either party. This section also states that the provisions of the agreement shall survive any decree notwithstanding this incorporation. This provision clearly is concerned with the survival of the provisions of the separation agreement in the event that a divorce is obtained by either party. It makes provision against the merger of the terms of the agreement in that event. A provision for a contingency such as this in an agreement does not, without more, demonstrate that the agreement is incidental to the occurrence of an event which is no more than a possibility. It was possible that petitioner's husband might obtain a divorce decree despite her refusal

to be a party to such a proceeding. The possibility also existed that the petitioner might change her mind about a divorce. Similarly, we do not believe that either section 2 or section 14 of the agreement demonstrates the required relationship between the agreement and the later divorce. These provisions limit support payments and petitioner's interest in insurance policies to the period in which she remains alive and does not remarry during her husband's lifetime. They do not indicate that a divorce is to come at a later date. These sections merely set forth the consequences if certain contingencies occur.

The facts presented here provide a much stronger basis for the conclusion that the agreement was not incident to the divorce than did the situation found in *George J. Feinberg*, 16 T. C. 1485, reversed *Feinberg* v. *Commissioner*, 198 F. 2d 260, where we had reached the same conclusion. We believe the facts of the petitioner's positive refusal to consent to a divorce, the execution of the agreement in lieu of a divorce or legal separation, the discontinuance of the separation action, and the conduct of petitioner and her husband sufficiently distinguish the facts here present from the *Feinberg* case. The facts lead us to the conclusion that the agreement of April 4, 1944, was not incident to the Florida divorce decree of October 23, 1944. Any other decision would run counter to the clear weight of the evidence.

*Decision will be entered under Rule 50.*