HAROLD HOLT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET K. HOLT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47636, 47862. Filed December 13, 1954.

*Bernard J. Long, Esq.*, for petitioner Harold Holt.
*Ellis J. Staley, Jr., Esq.*, for petitioner Margaret K. Holt.
*Donald J. Fortman, Esq.*, for the respondent.

472

OPINION.

OPPER, *Judge:* On the foregoing ultimate findings of fact the fundamental question presented is whether a support agreement is "incident" to[1] a subsequent divorce under section 22 (k) where the wife does

---

[1] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument *incident to such divorce or separation* shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * [Emphasis added.]

not want a divorce, has no knowledge that the husband has plans to institute divorce proceedings, and there is no mutuality of intent or plan and no objective evidence that such agreement was to be deemed incident to a divorce. The case is no stronger for a tax upon the wife in any respect than was *Florence B. Moses*, 18 T. C. 1020, 1024, where we said:

> The evidence does not indicate that the parties entering into the agreement contemplated divorce proceedings as were true in *Bertram G. Zilmer*, 16 T. C. 365. If plans for a divorce following the agreement were held by Albert Moses [the husband], he did not bring them to light. The fact that one party may be considering the possibility of a divorce is not sufficient to make the voluntary separation agreement an incident to a divorce later obtained. *Cecil A. Miller*, 16 T. C. 1010. Although there is no requirement of positive proof that both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement, *Izrastzoff* v. *Commissioner*, 193 F. 2d 625, affirming *Estate of Daniel G. Reid*, 15 T. C. 573, the actions and conduct of the parties, the time between agreement and divorce proceedings, and the participation of the parties in obtaining a divorce are elements and factors to be considered.

> Upon examination of the evidence, we are left with the conclusion that if a divorce had been made the consideration for entering into the voluntary separation agreement, the petitioner would not have executed the agreement * * *

If anything the instant proceeding presents a stronger case for taxing the husband than did *Florence B. Moses, supra.* In that case the Opinion continued:

> The respondent contends that section 21 of the agreement demonstrates that both husband and wife contemplated a divorce. That section declared that the provisions of the agreement may be incorporated in the final judgment or decree of divorce in any action brought by either party. * * *

On the contrary the present circumstances are, as our findings show, that such a provision was proposed and categorically rejected by the wife thereby putting the husband on notice that the agreement was not being made and could not be construed as having been intended as an incident to any divorce. Cf., e. g., *Bertram G. Zilmer*, 16 T. C. 365, and *Estate of Daniel G. Reid*, 15 T. C. 573, affirmed sub nom. *Izrastzoff* v. *Commissioner*, (C. A. 2) 193 F. 2d 625, with *Joseph J. Lerner*, 15 T. C. 379, revd. (C. A. 2) 195 F. 2d 296.

We are of course not unaware that the *Moses* case has been reversed, *Commissioner* v. *Moses*, (C. A. 2, 1954) 214 F. 2d 912. If the fact just stated is not adequate to distinguish the two results,[2] we must respectfully adhere to the position previously taken by the cases decided in the Tax Court. "Not every agreement which is followed by a divorce is 'incident to' the divorce within the meaning and intent

---

[2] *Lerner* v. *Commissioner*, (C. A. 2) 195 F. 2d 296, reversing 15 T. C. 379, may be distinguished on the same grounds as those set forth in the *Morse* case (p. 1024) : "The voluntary separation agreement was not employed by the court granting the divorce in establishing the legal and economic relationships between the parties as was true in *Lerner* v. *Commissioner* * * *."

of section 22 (k). \* \* \* The chief difficulty has been to determine from the facts in each individual case whether the necessary connection between the two exists."³ *Cecil A. Miller*, 16 T. C. 1010, 1013, 1014, revd. (C. A. 9) 199 F. 2d 597. We conclude that under the facts as found the payments were not made under an agreement incident to a divorce.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

FISHER, *J.*, dissenting: I fully concur in the Findings of Fact as set forth in conjunction with the majority Opinion.

While pointing out a possible distinction in the facts (to be discussed *infra*) the majority Opinion bases its views substantially on the reasoning of this Court in *Florence B. Moses*, 18 T. C. 1020. The decision in the *Moses* case, as stated in the majority Opinion in the instant case, was reversed by the Court of Appeals for the Second Circuit in 214 F. 2d 912, as was *Joseph J. Lerner*, 15 T. C. 379. (See 195 F. 2d 296.) Despite the reasoning supporting the reversals, the majority Opinion adheres to the previous position taken by this Court in said cases.

I have dissented because, in my opinion, for the reasons hereinafter set forth, the reasoning of the Second Circuit presents the better view.

The majority Opinion of this Court rests substantially upon the following: There was no mutuality of intent on the part of Harold and Margaret K. Holt either to obtain a divorce or, in the event that a decree of divorce should ensue, that the agreement for support was to be deemed incident thereto; that while the husband wanted a divorce, the wife was flatly opposed to it; that while the wife knew her husband wanted a divorce, she was unaware of any definite plans to institute proceedings in Florida or elsewhere; and that she did not know of the Florida proceedings until after they were instituted. Other facts are mentioned, but the foregoing is the foundation for the ultimate holding that the agreement involved in the instant case was not incident to the divorce.

In my judgment, Congress did not intend that the determination of whether or not an agreement is incident to a divorce or separation should depend upon such standards as those adopted in the majority Opinion. The intent of the wife, her anticipation or forecast of what might happen in the future, mutuality of intent on the part of husband and wife, and like factors reflected only in the minds of the parties

---

³ And see, e. g., *Jane C. Grant*, 18 T. C. 1013, affd. (C. A. 2) 209 F. 2d 430, decided the day before the *Moses* case where we held as a matter of fact that the agreement was incident to a divorce.

are vague and elusive. However clear they may be in the instant case, if they are adopted as ultimate tests, it would seem apparent that in cases of this general type, they will inevitably lead to confusion, issues of fact, and difficult problems of proof in an area in which it is highly desirable for interested parties to be as certain in advance of action as circumstances may permit.

An examination of the tests prescribed in the statute shows that Congress intended, to the extent possible, to establish definite and objective standards. The provisions of section 22 (k) require that there must be a divorce or legal separation. There must be a decree. There must be periodic payments. Such payments must be in discharge of a legal obligation. They must be imposed or incurred under a decree or a *written* instrument. If incurred under a written instrument, the instrument must be incident to the divorce or separation.

Eliminating, for the moment, the last factor, which is the focus of the dispute, each of the elements is clear and precise. The possibility of confusion is reduced to a minimum. The intangible factors of intent are absent.

In my judgment, the last factor is just as susceptible of measurement under the statute by precise standards as the other factors, and that Congress so intended. It seems to me to be apparent that where there is a written instrument providing for periodic payments in discharge of a legal obligation (or, in other words, in lieu of alimony), if such written agreement and the legal obligation which it discharges remain in effect at the time a subsequent decree of divorce or legal separation is granted, and if such written agreement (and the legal obligation which it discharges) survive such decree, the agreement must be deemed to be incident thereto. To my mind, such a construction is quite consistent with the language of the statute, and the application of such construction in implementing the statute will produce consistent results which accord with the patent objectives of the statute.

There can be no doubt that all of the circumstances which I have set forth in outlining my view of the essentials mounting up to an agreement incident to a divorce have actually occurred in the instant case. To my mind, the effect of such concurrence of events cannot be defeated by a lack of intent on the part of the wife, or an active unwillingness on her part to come within the statute, or a failure on her part to understand that her acts would bring her within it, even though such lack of understanding was due to mistaken advice of counsel.

It appears to me that the views which I have expressed above in relation to the instant case likewise set forth the essence of the views of the Second Circuit as expressed in the *Moses* and *Lerner* cases, *supra*.

The related effect of those cases is best understood by reading the Opinion in the *Moses* case as a sequel to the *Lerner* case, and by noting the close relationship of the facts in the *Moses* case to those in the instant case.

In the *Moses* case, the facts are substantially the same as those in the instant case, with one exception to be considered *infra*. The parties separated in 1943. A month later the wife brought an action for legal separation. After the trial commenced, it was halted while the parties attempted to work out a voluntary separation agreement. The husband wanted a divorce, but the wife was adamant against it. The parties desired to continue their efforts to agree upon terms of separation, and the proceedings were adjourned to give them further opportunity to agree. During the adjournment, respondent's attorney advised her that if she proceeded with her action and was successful in procuring a decree and an award for alimony, her husband could be punished for contempt if he failed to pay alimony as decreed, but that such payments would be taxable to her. He also advised her that if she entered into a voluntary separation agreement, the failure of the husband to make the agreed payments for support would not make him subject to contempt proceedings, but the payments would not be taxed to her. She chose to agree on the terms of a voluntary separation, and executed the agreement in due course. She did not do so in contemplation of any divorce proceedings being instituted either by herself or her husband.

Up to the end of the foregoing statement, I might well have been summarizing the facts in the case now under consideration. I come now to the one difference, namely, the provisions of paragraph 21 of the agreement in the *Moses* case, *supra*, which read as follows:

21. The provisions of this agreement, to the extent that they may be acceptable to the court, may be incorporated in the final judgment or decree obtained in any action hereafter brought by either party against the other for a divorce in any court of competent jurisdiction. Notwithstanding such incorporation, the provisions hereof shall not be merged in any such judgment or decree but shall, in all respects, survive the same.

No similar provision is to be found in the agreement in the instant case.

After the agreement was executed in the *Moses* case, subsequent events likewise paralleled those now before us. The New York proceeding was dismissed, and about 5 months after the execution of the agreement the husband instituted a divorce action in Florida. The wife learned about it when she received notice of the suit. She did not contest it.

The husband obtained a decree of absolute divorce. The agreement was not incorporated or referred to in the decree.

The precise language used in the opinion in the *Moses* case is of great significance as a basis for further discussion, and I therefore quote *in extenso*. Chief Judge Chase said:

Were it a condition precedent to the applicability of Section 22 (k) to prove that when she made the agreement it was done as part of an understanding with her husband that it would be followed by a suit for a divorce, we should not disagree with the decision of the Tax Court. But we have held otherwise in *Izrastzoff* v. *Commissioner*, 193 F. 2d 625, and *Lerner* v. *Commissioner*, 195 F. 2d 296. See also *Newton* v. *Pedrick*, 2 Cir. —— F. 2d —— dec'd April 28, 1954; *Feinberg* v. *Commissioner*, 3 Cir., 198 F. 2d 260, and *Commissioner* v. *Miller*, 9 Cir., 199 F. 2d 597; *Stewart* v. *Rothensies*, 114 Fed. Supp. 497.

As in the *Lerner* case, the issue in the *Feinberg* case was the right of the former husband to take deductions for payments pursuant to a separation agreement under Section 23 (u), but the same reasoning is applicable and on the facts the case is so closely in point as to be indistinguishable.

Here the execution of the separation agreement was followed by the husband's Florida divorce within six months. It was by its terms to survive a divorce decree, whether incorporated in it or not, and these provisions make it abundantly clear that the possibility of a divorce was realized by the respondent when she executed the agreement, however much she may have been opposed to having such a thing accomplished. The question of alimony is germane to such a proceeding and where, as here, the provisions of the agreement were apparently a substitute for alimony which was satisfactory to the respondent, since she did not appear in the divorce action and make any attempt to have them increased, the nexus between the agreement and the divorce decree needed to make Section 22 (k) applicable is present. What we said in the *Lerner* case, *supra*, at page 298 is equally pertinent here.

The term "written instrument incident to a divorce" was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred, * * * So where the payments obviously take the place of alimony and otherwise satisfy the stringent requirements of I. R. C. § 22 (k), although not formally incorporated into the decree they should not be denied effect under the statute merely because there is no evidence that divorce and settlement were not contemporaneously planned and carried out.

While the opinion of the Court of Appeals in the *Moses* case takes careful note of the significance of paragraph 21 of the separation agreement, we think it clear from the discussion and the quotation from *Lerner* v. *Commissioner*, *supra*, reversing 15 T. C. 379, that the court would have reached the same conclusion on principle even if the agreement had not contained paragraph 21. We think this is even more apparent upon consideration of that part of the opinion in *Lerner* v. *Commissioner*, *supra*, which immediately precedes the portion quoted with approval in the *Moses* case. In the *Lerner* case, Judge Clark said (195 F. 2d, at p. 298):

But this Court has recently recognized * * * that "There is no requirement in § 22 (k) of positive proof that both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement. * * * Legislative emphasis upon a mutually coexisting intent for divorce is not to be assumed in the absence of an expressed requirement * * *. Such legislative

history as is available stresses only the manifest fairness of charge to the wife and deduction by the husband of payments not only for alimony, but also for separate maintenance provisions 'in the nature of or in lieu of alimony· or an allowance for support.' * * * "

Even with this rationale it would still be possible * * * for the trier of facts to find that divorce was not contemplated at the time of the agreement and hence that the latter was not incident to the former. Such a critical examination of the facts appears to have been usual with the courts, although favoring the husband in actual result. * * *

This development, however, has posed a dilemma for tax attorneys, notably in states where the divorce might be avoided for collusion, * * * and it also has threatened to limit the indicated congressional policy of placing the tax burden of all general marriage settlement payments on the party entitled to their enjoyment. * * * Further reflection therefore constrains us to the view that Congress could hardly have intended so confined a meaning.

Immediately following the foregoing is the portion of the *Lerner* opinion quoted in *Commissioner* v. *Moses supra.*

I have studied the language of the *Moses* and *Lerner* opinions with great care in the light of the legislative policy which resulted in the enactment of the provisions of the law here pertinent. It is my view that the principles expressed in those opinions are fully consistent with the legislative intent, and at the same time furnish an objective standard which will produce order and consistency in the place of prior confusion growing out of difficult problems of proof and disputed issues of fact.

In the instant case, the written instrument is adequate proof of the existence of the husband's obligation at the time the Florida decree was obtained. The weekly payments obviously take the place of alimony. The written instrument which was in effect at the time of the decree, and survived the decree, was therefore incident to the divorce within the meaning of section 22 (k), although not formally incorporated into the decree, and despite the fact that it is clear that there was no mutuality of intent or plan that such agreement be made incident to the divorce.

It is my view, therefore, that the weekly payments totaling $2,200 paid to the wife in 1948, subsequent to the Florida decree, and the like payments to the wife totaling $2,600 in 1949, are deductible by the husband under the provisions of section 23 (u) and includible in the gross income of the wife under the provisions of section 22 (k) for the respective years and in the respective amounts above indicated.

I think it clear that the payments to the wife totaling $400 made in 1948 before the entry of the Florida decree are not includible in the wife's gross income and are not deductible by the husband. *Robert L. Daine*, 9 T. C. 47, affd. (C. A. 2) 168 F. 2d 449.

ARUNDELL and TIETJENS, *JJ.*, agree with this dissent.